**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

**MARY STEPHENS, as Guardian of the Person and Estate of A'MORIYAH STEPHENS** **PLAINTIFF**

v. Case No. 2:25-cv-00193-DPM

**HELENA-WEST HELENA SCHOOL DISTRICT; TONY ROACH, Principal, in his individual and official capacity; XAVIER HODO, Superintendent, in his individual and official capacity; and THE BOARD OF DIRECTORS OF THE HELENA-WEST HELENA SCHOOL DISTRICT, in their official capacity** **DEFENDANTS**

**FOURTH AMENDED COMPLAINT**
(Jury Trial Demanded)

Plaintiff Mary Stephens, as Guardian of the Person and Estate of A'Moriyah Stephens, by and through her attorneys, Sutter & Gillham, P.L.L.C., for her Fourth Amended Complaint against Defendants Helena-West Helena School District, Tony Roach, Xavier Hodo, and the Board of Directors of the Helena-West Helena School District, states and alleges as follows:

## I. PARTIES

1. A'Moriyah Stephens is an individual residing in Phillips County, Arkansas. At all times relevant to this action she was a student with disabilities, including diagnosed anxiety and depression, enrolled at Central High School in the Helena-West Helena School District. She is a

qualified individual with a disability within the meaning of Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, and the Arkansas Civil Rights Act.

2. Plaintiff Mary Stephens is an individual residing in Phillips County, Arkansas. By Order Appointing Guardian of the Person and Estate entered March 10, 2026, in the Circuit Court of Phillips County, Arkansas, Mary Stephens was appointed Guardian of the Person and Estate of A'Moriyah Stephens. Mary Stephens brings this action in her representative capacity as guardian, on behalf of and for the benefit of A'Moriyah Stephens and her estate. As the duly appointed guardian of the estate, Mary Stephens is the real party in interest in this action under Federal Rule of Civil Procedure 17(a) and Ark. Code Ann. § 28-65-305(a), and is represented herein by licensed counsel. References in this Complaint to actions taken by, or harm suffered by, "A'Moriyah" are made on her behalf by her guardian.

3. Defendant Helena-West Helena School District (the "District") is a public school district organized under the laws of the State of Arkansas and is a recipient of federal financial assistance. The District is a public entity within the meaning of Title II of the ADA.

4. Defendant Tony Roach was at all relevant times the Principal of Central High School and was responsible for student placement decisions and the implementation of Section 504 plans at that school. He is sued in his individual and official capacities. At all relevant times he acted under color of state law.

5. Defendant Xavier Hodo was at all relevant times the Superintendent of the Helena-West Helena School District and was responsible for district-wide compliance with federal and state disability laws. He is sued in his individual and official capacities. At all relevant times he acted under color of state law.

6. Defendant Board of Directors of the Helena-West Helena School District is responsible for the policies, practices, and customs of the District affecting students with disabilities and is sued in its official capacity.

## II. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws and Constitution of the United States, including 42 U.S.C. § 1983.

8. This action arises under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; the Fourteenth Amendment to the United States Constitution, enforced through 42 U.S.C. § 1983; and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 et seq.

9. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367 because those claims arise from the same case or controversy as her federal claims.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants reside in this District and because the events giving rise to the claims occurred in this District.

11. Mary Stephens prosecutes this action as the real party in interest pursuant to Federal Rule of Civil Procedure 17(a) and Ark. Code Ann. § 28-65-305(a), which provide that when there is a guardian of the estate, actions to benefit the estate of the ward shall be prosecuted by the guardian of the estate, who represents the interests of the ward in the action. The guardian is represented by licensed counsel and does not appear pro se.

12. To the extent any exhaustion of administrative remedies is required, Plaintiff seeks compensatory money damages that are not available under the Individuals with Disabilities Education Act, and her claims for such damages are therefore not subject to the exhaustion requirement of 20 U.S.C. § 1415(l). See Perez v. Sturgis Public Schools, 598 U.S. 142 (2023).

A'Moriyah has further aged out of the public school system, and Plaintiff no longer seeks prospective educational placement that the administrative process could provide.

## III. FACTUAL ALLEGATIONS

13. A'Moriyah Stephens is a qualified individual with a disability by reason of her diagnosed anxiety and depression, conditions that substantially limit one or more major life activities, including learning, concentrating, and interacting with others.

14. Prior to enrolling at Central High School, A'Moriyah had an existing Section 504 Plan designed to provide the accommodations necessary for her to obtain equal access to education notwithstanding her disabilities.

15. Upon A'Moriyah's enrollment at Central High School, the District and its staff were not informed of, did not review, and did not implement her existing Section 504 Plan, and provided none of the accommodations to which she was entitled.

16. Defendants knew or should have known of A'Moriyah's disabilities and her need for accommodations, and were obligated to evaluate her and to implement appropriate accommodations before making any decision regarding her educational placement.

17. Without conducting an appropriate evaluation, without convening any Section 504 team, and without considering her disability-related needs, Defendants placed A'Moriyah in an Alternative Learning Environment ("ALE") for the first nine weeks of the school year.

18. The ALE placement constituted a significant change in A'Moriyah's educational placement. Defendants imposed that change without conducting the evaluation required before such a change, without notice, and without affording A'Moriyah or her parent any opportunity to be heard.

19. The ALE placement isolated A'Moriyah from her peers, restricted her access to the campus, removed her from the general education environment, and excluded her from the academic, extracurricular, and social programs and activities available to non-disabled students and to similarly situated students who were not placed in ALE.

20. After the ALE placement began, A'Moriyah's treating physician advised that isolating her from her peers would worsen her anxiety and depression. Defendants were promptly notified of the physician's concerns and of the harm the placement was causing.

21. Despite this notice, Defendants continued the restrictive placement and failed to evaluate A'Moriyah, to convene a Section 504 team, to implement her accommodations, or to take any corrective action.

22. The differential and restrictive treatment Defendants imposed on A'Moriyah rested not on any legitimate educational or safety justification, but on unsubstantiated assumptions, negative attitudes, and fears concerning her disability and her family circumstances, and was arbitrary and irrational.

23. During this same period, Defendants were aware of a separate criminal investigation involving the death of another student, which involved allegations concerning a member of A'Moriyah's immediate family.

24. A'Moriyah was not accused of any wrongdoing in connection with that incident, was not under investigation, and was not subject to any disciplinary charge arising from it.

25. Notwithstanding the absence of any conduct attributable to A'Moriyah, Defendants treated her differently from other students, restricted her access to campus and peers, and imposed educational barriers upon her based on her familial association and her disability rather than upon any legitimate justification.

26. Defendants' actions were exclusionary and were taken without notice, hearing, evaluation, or any of the procedural protections required by law.

27. As a direct and proximate result, A'Moriyah was effectively denied access to her education, excluded from the general school environment, and deprived of equal participation in the District's educational programs, services, and activities.

28. When A'Moriyah was eventually removed from the ALE, Defendants assigned her an excessive and disproportionate course load — including seven in-person classes and four online courses — substantially more than was required for graduation, in a manner that imposed further barriers to her equal access to education and disregarded her documented disability-related needs.

29. The worsening of A'Moriyah's anxiety and depression — which Defendants were warned would result from the isolation they imposed and which in fact occurred — increased the severity of the educational harm she suffered, deepened the loss of her educational benefit and progress, and increased the nature, extent, and cost of the compensatory and remedial educational and related services now required to address that harm. The worsening of her condition is therefore probative of the existence, causation, and measure of her compensatory damages.

30. As a direct and proximate result of Defendants' acts and omissions, A'Moriyah was denied educational services and opportunities to which she was entitled, lost educational benefit and progress, incurred and will incur the cost of compensatory and remedial educational and related services necessary to address that loss, and was ultimately forced to withdraw from the school environment.

## IV. CLAIMS FOR RELIEF

### COUNT I — Discrimination in Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794

(Against the District and the Official-Capacity Defendants)

31. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

32. At all relevant times the District received federal financial assistance within the meaning of Section 504.

33. A'Moriyah Stephens is a qualified individual with a disability who was otherwise qualified to participate in the District's educational programs, services, and activities.

34. Defendants excluded A'Moriyah from participation in, denied her the benefits of, and subjected her to discrimination in the District's programs and activities by reason of her disability, including by failing to implement her Section 504 Plan, placing her in the ALE without evaluation or justification, excluding her from the general education environment and from school activities, and denying her equal access to education.

35. Defendants acted with deliberate indifference to A'Moriyah's federally protected rights. Defendants had actual knowledge of her disability and of the harm their actions were causing — including through the express notice provided by her treating physician — and nonetheless failed to act.

36. As a direct and proximate result, A'Moriyah suffered the loss of educational benefit and opportunity and incurred and will incur compensatory and remedial educational and related costs and other compensatory damages.

**COUNT II — Discrimination in Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132**

(Against the District and the Official-Capacity Defendants)

37. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

38. The District is a public entity, and the official-capacity Defendants are subject to Title II of the ADA.

39. By reason of her disability, Defendants denied A'Moriyah the benefits of the District's services, programs, and activities and subjected her to discrimination, and failed to make reasonable modifications necessary to afford her equal access.

40. Defendants acted with deliberate indifference to A'Moriyah's federally protected rights, with actual knowledge of her disability and of the harm being caused, and nonetheless failed to act.

41. As a direct and proximate result, A'Moriyah suffered the loss of educational benefit and opportunity and incurred and will incur compensatory and remedial educational and related costs and other compensatory damages.

**COUNT III — Failure to Evaluate Before a Significant Change in Placement, 34 C.F.R. § 104.35 (Section 504)**

(Against the District and the Official-Capacity Defendants)

42. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

43. Section 504 and its implementing regulation, 34 C.F.R. § 104.35, required Defendants to evaluate any student who, because of disability, needs or is believed to need special education or related services before any action with respect to initial placement and before any subsequent significant change in placement.

44. Defendants placed A'Moriyah in the ALE — a significant change in placement — without conducting any evaluation, without drawing upon information from a variety of sources, and without a placement decision made by a group of knowledgeable persons, all in violation of 34

C.F.R. § 104.35; and they failed to reevaluate her before continuing the placement and before imposing the disproportionate course load.

45. Defendants' failure to evaluate was undertaken with deliberate indifference and directly and proximately caused A'Moriyah to be misplaced, excluded, and denied educational benefit and opportunity, resulting in compensatory and remedial educational and related costs and other compensatory damages.

**COUNT IV — Retaliation and Discrimination Based on Familial Association (Section 504 and Title II of the ADA)**

(Against the District and the Official-Capacity Defendants)

46. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

47. Section 504 and Title II of the ADA prohibit discrimination against an individual because of that individual's known relationship or association with another person, and prohibit punitive or exclusionary treatment in the provision of public educational services.

48. Defendants subjected A'Moriyah to adverse treatment because of her familial association with a person who was the subject of a separate criminal investigation, and not because of any conduct attributable to A'Moriyah herself. Such treatment served no legitimate educational or safety purpose and had a discriminatory and exclusionary effect on her access to education.

49. As a direct and proximate result, A'Moriyah suffered the loss of educational benefit and opportunity and incurred and will incur compensatory and remedial educational and related costs and other compensatory damages.

**COUNT V — Deprivation of Constitutional Rights, 42 U.S.C. § 1983**

(Against Defendants Roach and Hodo in Their Individual Capacities)

50. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

51. At all relevant times Defendants Roach and Hodo acted under color of state law in their capacities as Principal and Superintendent.

52. Procedural Due Process. Under Arkansas law, A'Moriyah possessed a constitutionally protected property and liberty interest in her public education. Defendants Roach and Hodo deprived her of that interest by removing her from the general education environment, placing her in the restrictive ALE, and excluding her from school programs and activities, all without notice and without any opportunity to be heard, in violation of the Due Process Clause of the Fourteenth Amendment.

53. Equal Protection. The Equal Protection Clause forbids a State from treating a person with a disability differently from others on the basis of irrational prejudice, negative attitudes, unsubstantiated fears, or other arbitrary reasons that bear no rational relationship to a legitimate governmental purpose. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985). Defendants Roach and Hodo intentionally treated A'Moriyah differently from other similarly situated students by reason of her disability and her familial association, and their differential treatment of her rested on arbitrary and irrational grounds and on unsubstantiated assumptions and fears rather than on any legitimate educational or safety justification. Their conduct therefore lacked any rational basis and denied A'Moriyah the equal protection of the laws.

54. The rights described above were clearly established at the time of Defendants' conduct, and no reasonable official in their position could have believed that excluding a student from her education without notice or hearing, and singling her out for arbitrary differential treatment, was lawful.

55. As a direct and proximate result of the conduct of Defendants Roach and Hodo, A'Moriyah suffered the deprivation of her constitutional rights and the loss of educational benefit and

opportunity, and incurred and will incur compensatory and remedial educational and related costs and other compensatory damages, for which these Defendants are individually liable under 42 U.S.C. § 1983.

**COUNT VI — Violation of the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 et seq.**

(Against All Defendants)

56. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

57. The Arkansas Civil Rights Act prohibits discrimination on the basis of disability and protects the right of every person within the State to the equal protection of the laws, including the right to be free from intentional discrimination by persons acting under color of state law. Ark. Code Ann. §§ 16-123-105, 16-123-107.

58. A'Moriyah Stephens is a person with a disability within the protection of the Arkansas Civil Rights Act.

59. Defendants, acting under color of state law, intentionally discriminated against A'Moriyah on the basis of her disability and denied her the equal protection of the laws by placing her in the restrictive ALE without evaluation or justification, excluding her from educational programs and activities, treating her differently from similarly situated students on arbitrary and irrational grounds, and denying her equal access to education.

60. As a direct and proximate result, A'Moriyah suffered the loss of educational benefit and opportunity and incurred and will incur compensatory and remedial educational and related costs and other compensatory damages, and is entitled to the remedies provided by the Arkansas Civil Rights Act, including compensatory damages, costs, and a reasonable attorney's fee.

## V. DAMAGES AND INJURY

61. As a direct and proximate result of Defendants' acts and omissions, A'Moriyah Stephens has suffered, and Plaintiff is entitled to recover on her behalf, the following compensatory damages, which (as to the Section 504 and ADA claims) constitute relief not available under the IDEA and which are recoverable upon a showing of intentional discrimination or deliberate indifference, and which (as to the § 1983 and Arkansas Civil Rights Act claims) are recoverable as compensatory damages for the deprivation of her rights:

a. The value of the educational services, instruction, and access that were denied to her during and as a result of the improper ALE placement and the failure to implement her accommodations;

b. The reasonable cost of the compensatory and remedial educational and related services necessary to remedy the educational benefit and progress she lost, the need for and cost of which were increased by the worsening of her disabling conditions that Defendants were warned of and caused;

c. Damages for the lost educational opportunity and the disruption to her education, including harm flowing from her exclusion from school programs and activities and from her forced withdrawal;

d. Compensatory damages for the deprivation of her constitutional and statutory rights, as recoverable under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act; and

e. Such other pecuniary and compensatory damages as are recoverable under the respective statutes and as the evidence may establish.

62. Plaintiff pleads the worsening of A'Moriyah's mental-health condition as evidence of Defendants' deliberate indifference and as evidence bearing on the causation, severity, and

measure of her compensatory damages — including the increased cost of the remedial and related services required to address the harm — and, as to the Section 504 and ADA claims, not as a freestanding claim for emotional-distress damages.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mary Stephens, as Guardian of the Person and Estate of A'Moriyah Stephens, respectfully prays that this Court:

a. Enter judgment in her favor and against Defendants on all counts;

b. Award compensatory damages in an amount to be determined at trial, including the value of denied educational services, the cost of compensatory and remedial education and related services, damages for lost educational opportunity, and compensatory damages for the deprivation of her constitutional and statutory rights;

c. Enter a declaratory judgment that Defendants' acts and omissions violated Section 504, Title II of the ADA, the Fourteenth Amendment, and the Arkansas Civil Rights Act;

d. Award reasonable attorneys' fees, litigation expenses, and costs pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12205, 42 U.S.C. § 1988, and Ark. Code Ann. § 16-123-105, 107;

e. Award pre- and post-judgment interest as allowed by law; and

f. Grant such other and further relief, at law or in equity, as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

SUTTER & GILLHAM, P.L.L.C.
310 Natural Resources, Ste. 2
Little Rock, Arkansas 72205
(501) 315-1910 – Telephone

By: /s/ Luther Oneal Sutter
Luther Oneal Sutter, Ark. Bar No. 95-031
Attorney for Plaintiff